**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

JAMES E. WILLIAMS, JR.,
                              Petitioner,                          No. 04-CV-978
                                                                        (LEK/DRH)
              v.

MICHAEL GIAMBRUNO,
                              Respondent.
_____

**APPEARANCES:**                                          **OF COUNSEL**:

JAMES E. WILLIAMS, JR.
Petitioner Pro Se
128 Ackerley Road
Gilboa, New York 12076

HON. ANDREW M. CUOMO                          ROBIN A. FORSHAW, ESQ.
Attorney General for the State                      Assistant Attorney General
   of New York
120 Broadway
New York, New York 10271

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

       Petitioner pro se James E. Williams Jr. ("Williams") was formerly an inmate in the

custody of the New York State Department of Correctional Services ("DOCS").  Williams

was charged with three counts of sodomy in the first degree and one count of endangering

the welfare of a child.  Williams pleaded guilty to one charge of sodomy on October 6, 2000

in Broome County Court and was sentenced to a total determinate term of five years

_____

       [1] This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.4.

imprisonment followed by a five-year period of post-release supervision.[2]  Williams now

seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that he was

denied the effective assistance of counsel and the County Court erred in failing to advise

Williams, prior to accepting his guilty plea, that his five-year prison term would be followed

by five years of post-release supervision.  For the reasons which follow, it is recommended

that the petition be denied.


## I. Background

On April 3, 2000, investigators from the New York State Police and Department of

Social Services Child Protection Service investigated a disclosure by Williams' ten-year old

stepdaughter to her school counselor and then to the investigators.  Docket No. 11, Ex. C at

1.  The disclosure alleged that Williams had recently subjected her to sexual contact and

deviate sexual intercourse on several occasions.  Id.  Based on the child's disclosure, the

investigators located Williams and requested that he accompany them for questioning at

the State Police barracks.  Id.  Williams was questioned by an investigator, and admitted

that on several occasions he subjected his stepdaughter to oral sex.  Id.

On June 14, 2000, a grand jury charged Williams with three counts of sodomy and

one count of endangering the welfare of a child.  Docket No. 11, Ex. A at 1-4.  He was

---

[2]  Williams was released on parole on December 16, 2005, but his post-release
supervision maximum expiration date is not reached until December 16, 2010.  See DOCS
Inmate Information  (visited Dec. 31, 2006), <http://nysdocslookup.docs.state.ny.
us/kingw00>.  Therefore, Williams is "in custody" for the purpose of the habeas statute.
See Dixon v. Miller, 293 F.3d 74, 78 (2d Cir. 2002); see also Gary v. Conway, No. 9:03-
CV-480 (LEK), 2006 WL 3290149, at *3-4 (N.D.N.Y. Nov. 13, 2006).

offered a plea bargain on August 21, 2000 for one count of sodomy for which he would receive the minimum sentence of a five-year determinate sentence followed by five years of post-release supervision.  Ex. C at 2.  On October 6, 2000, Williams accepted the offer.  Id. Williams pleaded guilty on October 6, 2000.  Docket No. 11, Ex. I, App.  At no time before the plea was entered was there mention on-the-record of a term of post-release supervision; it was, however, mentioned to Williams several times prior to sentencing, including immediately after the plea.  Id. at 10.

On February 1, 2001, Williams advised the court that he wanted to withdraw his plea because "he was inadequately and inaccurately advised by [counsel] regarding the case and the plea at the time that he entered it."  Docket No. 11, Ex. H, App. at 33-34.  On February 8, 2001 Williams made an application before the County Court to withdraw his plea.  Id. at 35.  Williams claimed that there was insufficient evidence to convict him and that while no one forced him to plead guilty in this matter, he was under extreme duress, and was confused at the time of the guilty plea.  Id. at 36-41.  Further, Williams testified that counsel was inadequate in various aspects of his defense, including encouraging him to accept the plea deal, failing to give him any opportunity to present any evidence on his own behalf, and failing to advise him of the possibility of pre-trial evidentiary hearings.  Id. at 45-48.  In response to these accusations, the court asked if defense counsel had "explained to the defendant that pre-trial evidentiary hearings would be available…."  Id. at 48.  Counsel denied the Williams' allegations and informed the court of what he had advised his client. Id. at 48-49.

On March 6, 2001, the motion to withdraw his plea was denied and Williams was sentenced to the five-year determinate term of imprisonment with five years of post-release supervision.  Id. at 60.  Williams' notice of appeal was filed on March 7, 2001.  Ex. I at 4. On May 3, 2002, Williams filed a motion to vacate the judgment of conviction pursuant to N.Y. Crim. Proc. Law § 440.10.  Docket No. 11, Ex. B at 1.  In that motion, he claimed that the judgment was obtained in violation of his constitutional right to the effective assistance of counsel and that his plea was coerced and involuntary.  Id. at 2-3.  On July 18, 2002, Williams' motion was denied.  Docket No. 11, Ex. D.  The Appellate Division granted Williams permission to appeal the county court's denial of the motion and a notice of appeal was filed on October 15, 2002.  People v. Williams, 307 A.D.2d 537, 538 (3d Dep't 2003). Williams' appeal was denied on July 17, 2003.  Id.  On October 8, 2003, Williams' application for leave to appeal to the New York Court of Appeals was denied. People v. Williams, 100 N.Y.2d 646 (2003). This action followed.

## II. Discussion

## A. AEDPA Standards

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") restricts review of habeas petitions.  Pub. L. 104-132, 110 Stat. 1214.  Under the AEDPA, once a state court has adjudicated a petitioner's claim on the merits, a federal court may not grant a habeas petition on that claim unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal Law . . . " Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001); 28 U.S.C. § 2254(d)(1).  For the purposed

of the AEDPA, a claim is adjudicated on the merits if the state court disposed of it on substantive grounds and reduced its disposition to judgment.  Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

Furthermore, an "unreasonable application" of federal law is different from an incorrect or erroneous application.  Williams v. Taylor, 529 U.S. 362, 412 (2000).  The federal habeas court may not grant the writ merely because it would have decided the federal law question differently; there must be some "additional increment of incorrectness such that it may be said to be unreasonable."  28 U.S.C. § 2254(d)(1); Williams, 529 U.S. at 412; Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000).  See also Locklyer v. Andrade, 538 U.S. 63, 75 (2003) (holding  that the state court's application of clearly established law must be objectively unreasonable for it to be an "unreasonable application").  Moreover, a habeas petitioner "must do more than show that he would have [prevailed] if his claim were being analyzed in the first instance. . . ."  Eze v. Senkowski, 321 F.3d 110, 134 (2d Cir. 2003).

## A. Ineffective Assistance of Counsel

Williams contends that he was denied the effective assistance of counsel because his assigned attorney became a witness against him at the proceedings on his pro se motion to withdraw his guilty plea and because his counsel coerced him into pleading guilty.

As an initial matter, although the Appellate Division did not expressly give its rationale for denying Williams' ineffective assistance of counsel claim, its decision must nonetheless be considered an adjudication of that claim on the merits, thus triggering application of the

-5-

deferential standard of review set forth in 28 U.S.C. § 2254(d)(1).  See Sellan, 261 F.3d at 311 (holding that nothing in the phrase "adjudicated on the merits" requires the state court to have explained its reasoning process).  The language used by the Appellate Division to dismiss Williams' claim makes clear that the claim was adjudicated on the merits.  See Williams, 307 A.D.2d at 538, 762 N.Y.S.2d at 293 (finding that Williams' claim of ineffective assistance of counsel had "no merit").

Under the deferential AEDPA standards, for a petitioner to succeed, he or she must prove that the state court's adjudication was "contrary to or involved an unreasonable application of clearly established Federal Law." Aparicio, 269 F.3d at 93; 28 U.S.C. § 2254(d)(1).   To establish ineffective assistance of counsel, the petitioner must demonstrate that counsel's performance was deficient, and that this deficiency prejudiced the petitioner's defense.  United States v. DeJesus, 219 F.3d 117, 121 (2d Cir. 2000) (citing Strickland v. Washington, 466 U.S. 668 (1984)).  More specifically, the Second Circuit, applying Strickland to cases where the claim of ineffective assistance of counsel is brought because of a conflict of interest, has interpreted the test to be (1) whether a potential conflict of interest has resulted in prejudice to the defendant, or (2) whether an actual conflict of interest has adversely affected the attorney's performance.  Lopez v. Scully, 58 F.3d 38, 41 (2d. Cir. 1995).  In order to make this showing, the petitioner must prove "that some 'plausible alternative defense strategy or tactic might have been pursued,' and that the 'alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests.'"  United States v. Levy, 25 F.3d 146, 157 (2d Cir. 1994) (quoting Winkler v. Keane, 7 F.3d 304, 309 (2d Cir. 1993)).  Moreover, a "plausible alternative

-6-

defense strategy" only refers to those options that a "zealous advocate would reasonably pursue under the circumstances." Lopez, 58 F.3d at 42.

Under the test set forth in Lopez, Williams' claim must fail. Williams contends that his counsel became a witness against him by denying allegations of incompetence and coercion. Docket No. 11, Ex. H, App. at 48-49. His motion to withdraw the plea was not a "plausible alternative defense strategy" because Williams fully admitted his guilt at the time of the plea, indicated that he understood his rights, and stated that he had not been coerced into pleading guilty. Id., Ex. H, App. at 39-48. In light of these admissions, a challenge to the voluntariness of the plea "would undoubtedly have been rejected and would have risked antagonizing the trial court immediately before sentencing. Moreover, if successful, the motion would have jeopardized the availability of a favorable plea and permitted the judge to impose a considerably higher sentence after trial." Lopez, 58 F.3d at 42. As a consequence of the risks involved, the motion to withdraw Williams' plea was not an option that a "zealous advocate would reasonably pursue under the circumstances" and it "lacked 'sufficient substance to be a viable alternative.'" Id. at 42 (quoting Winkler v. Keane, 7 F.3d 304, 309 (2d Cir. 1993)).

Further, an actual conflict of interest "does not necessarily arise every time than an attorney responds to allegations of incompetent representation or contradicts his client in open court." United States v. Moree, 220 F.3d 65, 71 (2d Cir. 2000). The Second Circuit further noted that "[i]f the mere making of such an accusation, regardless of lack of justification, *ipso facto* resulted in a conflict of interest because the attorney cannot defend himself without contradicting his client, district courts would lose control of the criminal

-7-

cases before them." Id. at 71.  Because counsel here did nothing more than contradict

Williams' allegations against him, Williams has failed to demonstrate any prejudice.  Docket

No. 11, Ex. H at 48-49.  As such, it is clear that the state court's decision denying this claim

was not "contrary to or involved an unreasonable application  of clearly established Federal

Law." Aparicio, 269 F.3d at 93; 28 U.S.C. § 2254(d)(1).

Moreover, given the nature of Williams' claim of coercion, that claim must fail as well.

He admitted to the trial court that although counsel had advocated that he should plead

guilty, counsel was willing to try the case if he chose to proceed.  Docket No. 11, Ex. H,

App. at 39-40, 41, 45-47.  In light of this admission, no conflict of interest arose between

counsel and his client.  See United States v. Davis, 239 F.3d 283, 286-87 (2d Cir. 2001)

(holding that "if a defendant's allegations describe only competent counsel's candid advice

about the risks of going to trial, counsel will not be placed in an actual conflict between

advocating for his client's interests and his own").  Furthermore, there is a strong

presumption that counsel's conduct was reasonable and that any challenged action might

be considered sound trial strategy.  United States ex rel. Simmons v. Gramley, 915 F.2d

1128, 1133 (7th Cir. 1990).  Given the extreme leniency of the bargained-for sentence, the

strength of the prosecution's case as outlined above, and Williams' admission of his

counsel's willingness to proceed to trial, counsel's opinion that Williams should accept the

plea offer was "sound trial strategy." Gramley, 915 F.2d at 1133.  As such, the state court's

decision is clearly not an unreasonable application or contrary to clearly established federal

law. Aparicio, 269 F.3d at 93; 28 U.S.C. § 2254(d)(1).

**B. Involuntary Plea**

Williams contends that his plea was involuntary because he was not apprised of the fact that his determinate term of five years incarceration would be followed by a term of five years post-release supervision.  The Appellate Division found that the claim was procedurally barred because Williams failed to raise a timely objection to it.  Williams, 307 A.D.2d at 538, 762 N.Y.S.2d at 293.

**1. Procedural Bar**

A federal habeas court is precluded from reviewing a petition if the state courts' rejection of the argument rested on "independent and adequate state grounds."  Coleman v. Thompson, 501 U.S. 722, 736 (1991); Jones v. Stinson, 229 F.3d 112, 117 (2d Cir. 2000). A state procedural bar constitutes an independent and adequate state ground, thus precluding federal review.  Harris v. Reed, 489 U.S. 255, 262 (1989); Jones, 229 F.3d at 118.  See also Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999) (citing Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994)) (holding that New York State's preservation rule is firmly established and it is an adequate basis for precluding federal habeas review).  However, in Jones, the court held that absent a plain statement, the court will assume that the state court did not intend to rely on state law.  Jones, 229 F.3d at 118.

Even when a claim is procedurally barred on independent and adequate state grounds, two exceptions exist which permit review of such claims.  Coleman, 501 U.S. at 750.  First, review may occur if a petitioner "demonstrates[s] cause for the default and actual prejudice as a result of the alleged violation of federal law. . . ."  Id. at 750; Restrepo

-9-

v. Kelly, 178 F.3d 634, 637-38 (2d Cir. 1999).  To establish "cause," the petitioner must

show that "some objective factor external to the defense impeded counsel's efforts to

comply with the State's procedural rule."  Murray v. Carrier, 477 U.S. 478, 488 (1986);

Restrepo, 178 F.3d at 638.  To satisfy the prejudice prong of the test, the petitioner must

show not merely a possibility of prejudice, but that the alleged error worked to his "actual

and substantial disadvantage."  United States v. Frady, 456 U.S. 152, 170 (1982).

Furthermore, to establish prejudice, the claim must be meritorious.  Cappiello v. Hoke, 698

F.Supp. 1042, 1052 (E.D.N.Y. 1988).

        Petitioners can also overcome a procedurally barred claim in a federal habeas court if

they "demonstrate that failure to consider the claims will result in a fundamental miscarriage

of justice."  Coleman, 501 U.S. at 750; Restrepo, 178 F.3d at 637-38.  To establish a

fundamental miscarriage of justice, petitioners are required to introduce new evidence of

actual innocence that was not presented at trial.  Schlup v. Delo, 513 U.S. 298, 324 (1995).

Williams has failed to meet any of these high standards.

        The Appellate Division found that Williams' claim that his plea was involuntary was

procedurally barred by New York law.  Williams, 307 A.D.2d at 538, 762 N.Y.S.2d at 293.

The court stated that they were relying on state law to procedurally bar his claim.  Id.  The

court stated that Williams did not register a timely objection to the sentence before the trial

court so as to preserve the issue for appellate review and cited to a New York case, People

v. Williams, 300 A.D.2d 825, 827 (3d Dep't 2002), to support this holding.  Id.  Given that

the Appellate Division barred this claim on independent and adequate state grounds, this

claim is precluded from federal habeas review.  See Boykins v. Kelly, No. 87 CIV. 6608,

1990 WL 52294, at *3 (S.D.N.Y. Apr. 13, 1990) (holding that a "petitioner's waiver of his constitutional claim by virtue of his failure to comply with state procedural rules" is an independent and adequate state ground which bars review on a habeas petition).

Here, Williams contends that the County Court's improper denial of his request for substitution of counsel constitutes cause for his procedural default.  Docket No. 11, Ex. J at 2.  This claim is without merit.  As discussed below, Williams had several opportunities to either move to withdraw his guilty plea or vacate his conviction on this ground, yet he failed to do so.  This failure to avail himself of these opportunities was not "some objective factor external to the defense. . . ," which is a pre-requisite for the court to find cause.  Murray, 477 U.S. at 488; Restrepo, 178 F.3d at 638.

Even if Williams did meet the requisites for "cause," he cannot establish prejudice because the record supports the Appellate Division's conclusion that he understood the nature of the court's sentence promise. See People v. Williams,  307 A.D.2d at 538 (holding that Williams had "actual knowledge" of the term of post-release supervision.).  The record firmly supports this conclusion.  First, the record establishes that Williams' counsel understood that the term of post-release supervision was mandatory and stated this in front of his client.  See Docket No. 11, Ex. H, App. at 32 ("My understanding that's mandatory based on the level of offense."); see also Wayne v. Raynes, 690 F.2d 685, 687 (9th Cir. 1982) (denying habeas relief even though the trial court did not advise the petitioner of his ineligibility for parole until he had served his minimum term, where the record demonstrated that petitioner was aware of this requirement).

Moreover, Williams' awareness of the term is further supported by the fact that he (1) did not move to withdraw his plea on the ground that he was unaware of the post-release supervision that was mentioned at the end of the plea proceeding, (2) did not claim at sentencing that he was unaware of the post-release supervision which his counsel had just argued should be the minimum allowable term, (3) did not protest when the term of post-release supervision was included in the actual sentence, and (4) did not include this as a ground in his motion to vacate his conviction in his § 440.10 motion.  Docket No. 11, Ex. H, App. at 43; Ex. B 2-3.  Further, because Williams' total term of imprisonment was below the maximum allowed determinate term, he did not suffer prejudice.  See United States v. Bachynsky, 934 F.2d 1349, 1360 (5th Cir. 1991) (holding that failure to mention supervised release was harmless error where total imprisonment plus supervised release to which defendant was sentenced was less than maximum term of imprisonment of which he had been advised).

Finally, Williams cannot establish a fundamental miscarriage of justice because he has failed to introduce any new evidence of actual innocence.  Although he has claimed innocence, he has come forward with no evidence to prove this claim.  See Docket No. 11, Ex. H, App. at 36-37, 39, 45.  Further, the prosecutor came forward with an admission by Williams to the State Police, an admission before the family court, and the victim's accusations to prove Williams' guilt.  See Id., Exhibit H, pp. A.37-A.38.  Due to his failure to prove actual innocence, Williams failed to prove any constitutional error in the plea proceeding that has "probably resulted in the conviction of one who is actually innocent." Murray, 477 U.S. at 479-80.

-12-

Thus, Williams' claim here should be denied as procedurally barred.

### 2. Merits

In the alternative, Williams' claim that his guilty plea was involuntary is without merit. The failure to inform the defendant of the supervised release portion of the sentence prior to a guilty plea is harmless error "if the combined sentence of incarceration and supervised release actually received by the defendant is less than the maximum term" the defendant could receive.  Andrades, 169 F.3d at 134; Renaud, 999 F.2d at 625.[3]

During the plea allocution, the trial court did not inform Williams of the mandatory five-year period of post-release supervision.  Docket No. 11, Ex. H, App. at 29-31.[4]  He was sentenced to a five-year determinate term with a period of five years post-release supervision, for a total of ten years.  Id. at 60.  This is fifteen years below the maximum sentence of twenty-five years imprisonment of which he was advised and therefore constitutes "harmless error."  See Wayne, 690 F.2d at 687 (denying habeas relief even though the trial court did not advise the petitioner of his ineligibility for parole until he had served his minimum term, where the record demonstrated that petitioner was aware of this requirement); see also Bachynsky, 934 F.2d at 1360 (holding that failure to mention

---

[3] The Second Circuit has held post-release supervision to be a "direct consequence" of a sentence, therefore requiring the court to advise the defendant of it in order for a plea to be voluntary.  Michel v. United States, 507 F.2d 461, 465 (2d Cir. 1974). However, considering that this is "harmless error," Michel is not controlling here. Renaud, 999 F.2d at 624.

[4] Any person sentenced under New York law to a determinate prison term must be placed on post-release supervision for a mandatory period following his or her incarceration.  N.Y. Penal Law §§ 70.00(6), 70.45(1) (McKinney 1996).

supervised release was harmless error where total imprisonment plus supervised release to which defendant was sentenced was less than maximum term of imprisonment of which he had been advised).  Even though the deferential standard of the AEDPA does not apply here because the Appellate Division did not adjudicate this claim on the merits, the claim still fails because this was harmless error, not warranting habeas relief.

Accordingly, the petition on this ground should be denied in the alternative on the merits.[5]


### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the petition for writ of habeas corpus be **DENIED**.

Pursuant to 28 U.S.C. §636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAY WILL PRECLUDE APPELLATE REVIEW**. Roland v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

───────────────────

[5]  In the alternative, the record supports the allegation that Williams had actual knowledge of that mandatory period of post-release supervision.  See Williams, 307 A.D.2d at 538.  In light of his actual knowledge of this requirement, the trial court's failure to mention the mandatory term of post-release supervision affords no basis for habeas corpus relief.  See Wayne, 690 F.2d 685 (denying habeas relief even though trial judge did not advise petitioner of his ineligibility for parole until he had served his minimum term, where the record demonstrates that petitioner was aware of this requirement).

**IT IS SO ORDERED.**

Dated: January 9, 2007
          Albany, New York

United States Magistrate Judge